Constance SMITH, Appellant,

v.

Clifton G. TUCKER, Sr. and Walter Tucker, Appellees.

No. 6810.

District of Columbia Court of Appeals.

Argued March 19, 1973.

Decided May 4, 1973.

George H. Windsor, Washington, D. C., for appellant.

Morton J. Frome, Silver Spring, Md., for appellees.

Before KELLY and NEBEKER, Associate Judges, and QUINN, Associate Judge, Retired.

NEBEKER, Associate Judge:

This is an appeal from a judgment awarding damages in a malicious prosecution suit. The primary question presented is whether the evidence warranted submission of the case to the jury. After reviewing the record and briefs, and hearing oral argument, we reverse.

The evidence showed that Mrs. Smith, appellant, was the operator of a neighborhood tavern for seven years. After unlocking the front door and entering the tavern one morning, she noticed a silhouette in the kitchen at the rear of the tavern. Being afraid, she remained at the front door for a few minutes. Upon hearing the sound of footsteps going down the back stairs, she proceeded to the rear door, believing it was then safe, and opened it in order to determine the whereabouts of her dog which was kept inside the tavern. This less than heroic animal was sitting on the back steps. As Mrs. Smith went out the back door, she saw an individual whom she recognized and later identified as Walter Tucker running down the back alley. She saw him from the rear and watched him run the length of the alley. Mrs. Smith then ran to the front of the tavern and down the street in an unsuccessful attempt to get another look at Tucker.[1] Upon returning to the tavern, she discovered more than $100 missing from a box hidden in the kitchen. The police were

called and the incident reported. Mrs. Smith did not initially give the police Walter Tucker's name because she could not remember it at the time. She did, however, make them aware of whom she had seen "by telling them where he lived." She remembered that the individual whom she saw running down the alley was named Tucker but she could not remember his first name since she also knew he had many brothers. She soon learned his first name by asking around the neighborhood, and then informed the police who had come to fingerprint the scene.

Appellant was acquainted with Walter Tucker by having frequently seen him around the neighborhood. Indeed, she and Walter Tucker would speak to each other upon meeting on the street. He also frequented appellant's tavern about once a week and she recalled him previously showing her his ID card in order to purchase beer. There had been no prior bad feelings between Mrs. Smith and Walter Tucker. She described him as a "nice person as far as attitude."

Later in the day, appellant saw Walter Tucker walking past the tavern. She approached him on the street and asked "why he had broken into [her] place." He denied he had broken in and said he was at work with his father during the time of the break-in. Walter Tucker then brought his father, Clifton G. Tucker, Sr., to the tavern and his father confirmed his alibi. Mrs. Smith discounted the father's statement that Walter Tucker had been at work with him by indicating that she would expect a father to lie for his son. She also stated that she was sure that she had seen Walter Tucker running from the tavern and that the matter was in the hands of the police. Mrs. Smith made no attempt to confirm the fact that Walter Tucker had been at work during the break-in or to report the asserted alibi to the police. Walter Tucker was arrested on a warrant obtained by the police on the following day

1. See note 3, *infra*.

based upon appellant's identification. The complaint against Walter Tucker was ultimately dismissed by the United States Attorney.

Appellant Smith contends that it was error for the trial court judge not to have found as a matter of law from the undisputed facts that appellant had probable cause to make the complaint and to identify Walter Tucker as the burglar. Appellees on the other hand argue that it was proper for the trial court to submit the question of probable cause to the jury. They contend there were factual issues respecting Mrs. Smith's honest belief that Walter Tucker was the intruder.

■ An essential element of an action of malicious prosecution is lack of probable cause. Prieto v. May Department Stores Co., D.C.App., 216 A.2d 577 (1966); Wolter v. Safeway Stores, 80 U.S.App.D.C. 357, 153 F.2d 641 (1946). "[A] showing of probable cause [therefore] constitutes a valid defense and will warrant a directed verdict for the defendant." Prieto v. May Department Stores Co., *supra* at 578; footnotes omitted. The question of probable cause is a mixed question of law and fact. *Id.*; Brooking v. Lemon, D.C.Mun.App., 96 A.2d 849 (1953). Where the facts are not in dispute the question of probable cause is one of law for determination by the court. Prieto v. May Department Stores Co., *supra*; Brooking v. Lemon, *supra*; Chapman v. Anderson, 55 App.D.C. 165, 3 F.2d 336 (1925). Where the facts are in dispute, the existence of the facts are for the jury, " 'but their effect when found is a question for the determination of the court.' " Brooking v. Lemon, *supra* at 851; *accord,* Chapman v. Anderson, *supra*. It is the duty of the court when the facts are in dispute to submit the question to the jury with instructions that if they find the facts to be one way they amount to probable cause and if they find them to be another that they do not amount to probable cause.

Brooking v. Lemon, *supra*; Chapman v. Anderson, *supra*.[2]

■ The facts in the instant case indicated that Mrs. Smith saw a silhouette in the rear of her tavern upon opening it. After hearing the intruder going down the back steps, she proceeded to the back door. About a minute after opening it, she saw an individual she knew as a Tucker brother running down the back alley. She notified the police and reported whom she had seen to the best of her ability. When she later ascertained his full name she also gave that to the police. This testimony was not impeached as to any of these facts. Indeed, there was no real dispute as to her conviction or good faith except that appellees assert that after Mrs. Smith was told of the alibi—which was after the full report to the police—she had a duty to report the asserted alibi to the police. Appellees also argue that it was not reasonable for Mrs. Smith to conclude that it was the intruder who was running down the alley a minute after the intruder had departed the tavern. They alternatively argue that in any event Mrs. Smith did not have an adequate opportunity to view him, seeing him only from the rear. Appellees conclude that these questions were factual issues to be left to the jury. Reasonableness, however, is a question of law to be determined by the court. Prieto v. May Department Stores Co., *supra*; Cusick v. Second National Bank, 73 App.D.C. 16, 19, 115 F.2d 150, 153 (1940) (by implication). As to the question whether Mrs. Smith had an adequate opportunity to see, thus to sufficiently identify Walter Tucker, we observe that, absent evidence to the contrary, human experience teaches that people can be identified while walking away from the viewer either because of an angular view or because other features such as shape or gait are observed. There is no evidence in this case to indicate that Mrs. Smith could not reasonably identify Walter Tucker nor was there any in-depth effort by him to il-

2. *See* Annot., 87 A.L.R.2d 170 (1963) for a general discussion of finding probable cause or lack thereof as a question of fact or law.

luminate possible factual bases to undermine her professed positivity that she saw him. On this record there was no fact issue respecting probable cause for the jury to resolve. The case of Viner v. Friedman, D.C.Mun.App., 33 A.2d 631 (1943), upon which the trial court placed its reliance, is not to the contrary for that decision recognized that when facts are contradicted, as they were on that record, a jury issue exists.

■ Appellees also argue that a jury issue existed regarding Mrs. Smith's honest belief that Walter Tucker was the person she saw. Reliance is placed on Stewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116 (1879), for the proposition that Mrs. Smith's honest belief of the facts relied upon to establish probable cause is always a question for the jury. *Stewart,* however, stated that honest belief only becomes a jury question when this issue is raised "out of the nature of the evidence". *Id.* at 194. The facts in *Stewart* showed that there was some doubt in the minds of the parties as to whether they could bring bankruptcy proceedings against the plaintiffs (that issue was then pending in another action). There was, therefore, evidence in *Stewart* from which the issue of plaintiffs' honest belief was raised. The instant case contains no such evidence. Indeed, the only

evidence going to Mrs. Smith's honest belief of the facts indicates she was always positive of her identification of Walter Tucker.[3] Her only initial lack of knowledge was as to Tucker's first name which she learned by prompt neighborhood inquiry.

■ Appellees argue that honest belief was put in issue since the evidence showed that Mrs. Smith was informed of Walter Tucker's alibi and that she did not make any investigation of it or inform the police. Appellees are in error for probable cause is to be determined at the time Mrs. Smith made her report to the police and not in the light of subsequent assertions of innocence by Walter Tucker and his father. Stewart v. Sonneborn, *supra.* Certainly appellant was under no duty to investigate an alibi after the matter was reported nor was she required to accept the explanation of Walter Tucker's activities. See Shaw v. May Department Stores Co., D.C. App., 268 A.2d 607, 610 (1970). The question of guilt or innocence is universally recognized as an entirely subjective fact outside the issue of probable cause. *See* Coleman v. Burnett, 477 F.2d 1187 at 1202 & n. 80 (D.C.Cir. 1973).[4]

[W]here . . . a crime of a serious nature has been committed and from the

---

3. Her specific testimony was that she was "hoping I could see whoever it was again go by." Appellees do not contend that this statement creates a fact issue respecting honest or good faith belief. They are correct in not doing so for the record also reveals that Mrs. Smith knew Walter Tucker but not by his first name because "I think he has many brothers."

4. There it was said:
   *Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.* [Compare People v. Wisecarver, 67 Cal.App.2d 203, 153 P.2d 778, 781 (1944); Stroman v. Gilbert, 2 Conn.Cir. 179, 197 A.2d 99, 102 (1963); State v. Howland, 153 Kan. 352, 110

   P.2d 801, 806–807 (1941).] Proof beyond a reasonable doubt, on the other hand, connotes evidence strong enough to create an abiding conviction of guilt to a moral certainty. The gap between these two concepts is broad. A magistrate may become satisfied about probable cause on much less than he would need to be convinced. *Since he does not sit to pass on guilt or innocence, he could legitimately find probable cause while personally entertaining some reservations.* By the same token, a showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause. . . . [Emphasis supplied; one footnote incorporated into text and one footnote omitted.]

admitted facts or uncontradicted evidence it appears that the injured party has done nothing more than take reasonable and proper steps for the discovery and apprehension of the criminal that party merits, and should receive, the protection of the court. [Carroll v. Parry, 48 App.D.C. 453, 462 (1919).]

From the uncontradicted evidence in this case we find as a matter of law that appellant had probable cause and that it was error to deny her motion for a directed verdict. The judgment is

Reversed with instructions to enter judgment for appellant.