Harvey H. AMMERMAN, Appellant,

v.

Pauline M. NEWMAN et al., Appellees.

No. 11181.

District of Columbia Court of Appeals.

Submitted Feb. 18, 1977.

Decided March 17, 1978.

---

Brian J. Nash, Washington, D. C., for appellant.

Alvin B. Davis, pro se.

James C. Gregg, Washington, D. C., with whom James B. Sarsfield, Washington, D. C., was on brief, for appellee Jay W. Freedman.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

PER CURIAM:

This action brings before us the state of the law in the District of Columbia with respect to proceedings in malicious prosecution. We affirm the action of the trial court granting summary judgment for the appellees.

In August of 1972, Mrs. Pauline Newman brought a medical malpractice action against appellant after the death of her husband while under appellant's care. Mrs. Newman alleged that appellant had negligently failed to reveal to her husband the risks inherent in the performance of a diagnostic test known as a pneumoencephalogram. Following the entry of a directed verdict in his favor appellant brought the instant action for malicious prosecution against the parties to the malpractice suit, including Jay Freedman and Alvin Davis,

Mrs. Newman's attorneys. Drawing inferences from the fact that Mr. Freedman is Mrs. Newman's son-in-law, appellant contends that he, and by association, Mr. Davis, were intimately involved in the deliberations which led to the allegedly nonmeritorious claim. By an order dated June 3, 1976, the motions of Freedman and Davis for summary judgment were granted. The present appeal is taken from that order. This appeal brings before us for review only the summary judgment orders with respect to Freedman and Davis; therefore, Mrs. Newman herself is not a party.

To support an action for malicious prosecution in the District of Columbia the plaintiff must show that the original action was instituted maliciously and without probable cause, and it must have terminated in his favor. *Chapman v. Anderson,* 55 App.D.C. 165, 3 F.2d 336 (1925). *See also Chatterton v. Janousek,* 108 U.S.App.D.C. 171, 280 F.2d 719 (1960). In addition, the action will not lie where as a result of the action challenged by the plaintiff, there was no arrest of his person or seizure of his property, and no special injury sustained which would not necessarily result in suits to recover for like causes of action. *Nolan v. Allstate Home Equipment Co.,* D.C.Mun. App., 149 A.2d 426, 429 (1959). Applying these principles to the facts before us, we conclude that based on the record, there is no genuine issue as to any material fact, and that appellees were entitled to judgment as a matter of law. We shall briefly consider each element of the offense charged.

## PROBABLE CAUSE

Lack of probable cause is an essential element of an action for malicious prosecution, and a showing of probable cause is thus a valid defense which warrants a directed verdict for the defendant. *Smith v. Tucker,* D.C.App., 304 A.2d 303 (1973), citing *Prieto v. May Department Stores, Co.,* D.C.App., 216 A.2d 577 (1966). With reference to civil actions, probable cause has been said to be such reason sup-

ported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper. *See Masterson v. Pig'n Whistle Corp.,* 161 Cal. App.2d 323, 326 P.2d 918 (1958). One need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it, however. Probable cause does not mean sufficient cause. *Burt v. Smith,* 203 U.S. 129, 27 S.Ct. 37, 51 L.Ed. 121 (1906). According to the generally accepted view, probable cause depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it. It may flow from a belief that turns out to be unfounded as long as it is not unreasonable. *Lee v. Dunbar,* D.C.Mun.App., 37 A.2d 178 (1944).

Appellant contends that the following facts establish lack of probable cause: that he informed Mr. and Mrs. Newman and their son of the risks involved in the pneumoencephalogram on several occasions, and obtained Mr. Newman's written authorization for the procedure; that an independent physician also informed the Newmans of the attendant risks, and that still another physician, a Dr. Raul V. Vernal, informed appellees that he did not feel that grounds for a malpractice case existed. These facts in themselves do not raise appellant's contention relative to lack of probable cause to one of a material issue of fact.

Appellant is aware that appellees brought the malpractice action relying on the authority of a then recently decided case in the United States Court of Appeals for the District of Columbia, *Canterbury v. Spence,* 150 U.S.App.D.C. 263, 464 F.2d 772 (1972), addressing the issue of a physician's duty to disclose. Recognizing that the average patient has little or no understanding of the medical arts, the court concluded that the patient's right of *self-decision* shapes the boundaries of the duty to reveal. "That right can be effectively exercised only if the patient possesses enough information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the pa-

tient's need . . . ." *Id.* at 277, 464 F.2d at 786 (footnote omitted). The court further decided that lay witness testimony can competently establish a physician's failure to disclose specific risk information, the patient's lack of knowledge and the adverse consequences following the treatment. *Id.* at 283, 464 F.2d at 792. Appellees apparently believed that the *Canterbury* rationale would sustain them where the facts, although indicating that a disclosure of possible risk was made, are far from clear as to whether Mr. Newman made a knowing acceptance. Although ultimately unavailing, their position is not patently unreasonable.

The fact that the *Canterbury* court concluded that expert testimony is not necessary on the question of the duty to disclose sheds some light on the possible reasons behind appellees' failure to heed Dr. Vernal's opinion that a malpractice suit was unwarranted. Dr. Vernal's contribution consisted primarily of his statement that death could occur as a result of a pneumoencephalogram without malpractice; he did not address himself to the duty to disclose. Further, his position could have been interpreted, with historical justification, as a "closing of the ranks" with his colleague to withstand an attack by laymen.

Finally, where the facts are not in dispute, the question of probable cause is one of law for determination by the court. *Smith v. Tucker, supra.* It cannot be said with respect to this element that the motion for summary judgment was improperly granted.

### MALICE

The second prerequisite to the successful maintenance of an action for malicious prosecution is that the action on which it is based be brought maliciously. *Nolan v. Allstate Home Equipment Co., supra.* It is generally held that the requisite malice is that dependent on the existence of an improper motive (as distinguished from malice in the technical legal sense), and has also been described as the existence of an evil purpose or motive, a wicked or mischievous intent, or a wilful, wanton, reckless or op-

pressive disregard to the rights of the plaintiff. 52 Am.Jur.2d. *Malicious Prosecution* § 46 (1970).

█ With respect to his claim of malice, appellant attempts to treat the parties interchangeably, apparently on the theory that the alleged malice of Mrs. Newman is imputed to her attorneys because one of them is her son-in-law. Appellant contends that "[s]ince appellees Freedman and Davis had uncharacteristically close ties to the family's decision-making process, there is a basic question of material fact regarding their degree of involvement in permitting an unwarranted suit to run its full course." Such an unsupported allegation is clearly insufficient. It may have been the better practice for Mr. Freedman to have declined to associate himself with a suit involving a close member of his family, but this in no way establishes malice on his part and even more emphatically not with respect to Mr. Davis.

### SPECIAL INJURY

█ Finally, in order for a plaintiff to prevail in an action for malicious prosecution in a civil suit, there must be an arrest of the person or seizure of the property of the plaintiff, or other special injury sustained. *Nolan v. Allstate Home Equipment Co., supra.* " 'This doctrine is supported by the following consideration: the courts are open and free to all who have grievances and seek remedies therefor, and there should be no restraint upon a suitor, through fear of liability resulting from failure in his action, which would keep him from the courts. . . .' " *Peckham v. Union Finance Co.,* 60 App.D.C. 104, 105–06, 48 F.2d 1016, 1017–18 (1931), *quoting Wetmore v. Mellinger,* 64 Iowa 741, 18 N.W. 870, 871 (1884).

█ Appellant effectively concedes that he has suffered no injury that would not normally occur as a consequence of a malpractice suit, and appears to recognize that the authority in this jurisdiction does not support his claim. He seeks to avoid the application of the rule by arguing that it is inequitable in the context of medical malpractice actions. He contends that the fact that such actions are particularly harmful to the reputations and livelihood of physicians calls for a modification of the rule with respect to them. The purpose of the special injury rule, however, is to strike a balance between allowing free access to the courts for the vindication of rights without fear of a resulting suit, and the undue exercise of such right. *Davis v. Boyle Bros.,* D.C.Mun.App., 73 A.2d 517, 521 (1950). Appellant's argument, if accepted, would upset that delicate balance. The nature of his profession, given its profound impact on the lives of those with whom he deals, cannot be allowed to insulate him from potential liability. In order to maintain a free access to the courts by persons with grievances who might otherwise be restrained from seeking redress because of their fear of liability should they fail, the special injury rule has consistently been upheld.

The limitation is sound. When disputes reach the litigious stage, usually some malice is present on both sides. Friendly tort suits are not common. Nor is existence or want of probable cause always easy to determine until the event of the litigation is known. Some margin of safety in asserting rights, though they turn out to be groundless and their assertion accompanied by some degree of ill-will, must be maintained. Otherwise litigation would lead, not to an end of disputing, but to its beginning, and rights violated would go unredressed for fear of the danger of asserting them. [*Melvin v. Pence,* 76 U.S.App.D.C. 154, 157, 130 F.2d 423, 426 (1942).]

█ We conclude that the record reveals a lack of any triable issue of fact, and that appellees were entitled to prevail as a matter of law. While motions for summary judgment should be granted sparingly, when the facts and applicable legal standards lead but to one conclusion, it is not error to grant such a motion. *Reyman v. Edward H. Jones & Co.,* D.C.Mun.App., 96 A.2d 42 (1953).

The judgment appealed from is

*Affirmed.*