James H. TYLER, Appellant,

v.

CENTRAL CHARGE SERVICE, INC., Appellee.

No. 81–570.

District of Columbia Court of Appeals.

Argued Dec. 3, 1981.

Decided April 15, 1982.

---

James H. Tyler, pro se.

Bruce A. Fredrickson, Washington, D. C., with whom Willie L. Leftwich and Ronald C. Jessamy, Washington, D. C., were on the brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

PER CURIAM:

This appeal arises from a trial court order granting a directed verdict in favor of appellee, Central Charge Service, Inc. (Central Charge), in a suit for wrongful levy of attachment of appellant's wages. We reverse and remand the case for a new trial.

I

■ According to the Small Claims Branch docket and pleadings, Central Charge initiated a small claims action against appellant, James H. Tyler, for collection of a debt. On June 8, 1978, the court entered a default judgment against Tyler, and, on June 22, issued a writ of attachment. On July 13, 1978, Tyler moved to quash the attachment and vacate the judgment. The court denied the motion. On July 27, 1978, Tyler again moved to quash the attachment and vacate the judgment but added the following conditions:

> Deft. agrees to pay pltf. the sum of $70.00 by 7/28/78; then $70.00 by the day of each month thereafter beginning 9/1/78, and until the total debt of $277.57 is satisfied. Defts. payments to be made into the Court Registry . . . .

The court granted this motion.[1] Tyler deposited $70 into the Court Registry on July 28, August 7, and September 11, 1978. Tyler deposited $67.57 on October 16, 1978. Tyler's account in the Registry reflects a receipt of $277.57 as of October 18, 1978. Tyler fully complied with the court's conditions for the granting of the motion to vacate Central Charge's initial judgment. He paid the full amount of his debt.[2]

Central Charge apparently never checked the Court Registry to see if Tyler had made the payments. On July 12, 1979, more than nine months after Tyler had paid the amount due, Central Charge sought issuance of an attachment against Tyler's wages.[3] The court issued an attachment order on August 30, 1979,[4] and Central Charge collected money through garnishment of Tyler's wages. Tyler notified his employer and the Court Registry that he had already made all required payments. According to Central Charge, the Clerk of the Court informed it of this fact. On September 25, 1979, Central Charge withdrew the money from the registry and returned it to Tyler.[5] Central Charge then moved to dismiss the case as paid and settled, and on October 3, 1979, the court noted that the judgment was satisfied.

On March 19, 1980, Tyler instituted an action against Central Charge claiming that appellee "through its employees or agents . . . wilfully and without probable cause issued legal process for the attachment of plaintiff's salary . . . ." At trial on April 9, 1981, the court granted Central Charge's motion for a directed verdict at the close of plaintiff's rebuttal. This appeal followed.

II

■ In this jurisdiction, a common law action for wrongful levy of attachment "is

---

1. In its brief, Central Charge states that the court denied the motion to vacate and granted a stay of execution. The docket, however, indicates that the court granted this motion to vacate, which was conditional on payments into the registry.

2. Central Charge argues that Tyler failed to pay interest on the amount owed after June 22, 1978. The motion granted on June 27, 1978, states that the debt would be fully satisfied upon payment of $277.57. Assuming that Central Charge would be entitled to an additional few dollars in interest, Central Charge waived the right to this money by failing to seek to include this amount in the June 27 order or to amend the order to include additional interest.

3. Central Charge sought to attach Tyler's wages after Central Charge had been unsuc-

cessful in attaching Tyler's wife's wages pursuant to a writ issued on June 29, 1979.

4. The docket reflects that on June 22, 1979, the court granted Central Charge's "motion to set aside the stay of execution." The docket, however, does not reflect an initial issuance of a stay of execution. Central Charge's motion, therefore, was not properly framed. Additionally, neither the motion nor notice of service of the motion is included in the Small Claims file. There is no indication in the record that Central Charge attempted to contact appellant prior to seeking the attachment of his wages.

5. The record is unclear as to whether the money was returned directly or through Tyler's employer.

substantially one for malicious prosecution." *Davis v. Peerless*, 103 U.S.App.D.C. 125, 128 & n.8, 255 F.2d 534, 536–7 & n.8 (1958).[6] *See Perez v. Fernandez*, 202 U.S. 80, 96, 26 S.Ct. 561, 564, 50 L.Ed. 942 (1906). As a general rule, to support a claim of malicious prosecution, plaintiff must prove:

(1) the underlying suit terminated in the plaintiff's favor;

(2) malice on the part of the defendant;

(3) lack of probable cause for the underlying suit; and

(4) special injury occasioned by the plaintiff as the result of the original action. [*Morowitz v. Marvel*, D.C.App., 423 A.2d 196, 198 (1980).][7]

■ The record before us reflects that appellant can make such a showing. The requirement that the plaintiff establish that the underlying suit terminated in his favor is subject to an exception where the underlying suit was litigated *ex parte* or the original judgment was obtained through fraud or imposition on the court. *See Lockett & Williams v. Orens Mfg. Co.*, 8 Ga.App. 772, 774, 70 S.E. 255, 257 (1911); *Zinn v. Rice*, 154 Mass. 1, 4, 27 N.E. 772, 773 (1891); W. Prosser, Law of Torts § 120 at 853–55 (4th ed. 1971).

■ In this case, the action which gave rise to the claim of malicious prosecution was Central Charge's effort, instituted in the summer of 1979, to obtain attachment of Tyler's wages.[8] Appellee sought to attach Tyler's wages through a motion to set aside a stay of a writ of execution. The record contains no copy of the motion nor any evidence that the motion was served on Tyler, and the motion was granted *ex parte*. It is clear from the face of the court docket and from the records of the Court Registry that Tyler could have prevented the issuance of this attachment if he had been given the opportunity to contest the claim that money was owing.

Additionally, the docket reflects that the court may have been misguided regarding the basis of the attachment. The Small Claims Branch granted a motion to set aside a stay of a writ of execution although no stay was in effect, no valid writ existed, and court records disclose that the underlying judgment should have been vacated. A reasonable juror could infer that the attachment would not have issued unless Central Charge had made false representations that a stay of execution was in effect and that Tyler still owed money under the initial June 8, 1978 judgment. Under these circumstances, Tyler need not show that he prevailed in the underlying second attachment proceeding. *See Lockett & Williams, supra*, 8 Ga.App. at 774, 70 S.E. at 257 (judgment in defendant's favor which was based on defendant's fraudulent allegations would not bar a subsequent suit for malicious prosecution).

Moreover, an argument can be made that Tyler did "prevail" in the second attachment proceeding because, on October 3, 1979, the court vacated the attachment.[9]

6. Appellant clearly indicated that his suit was for wrongful attachment but improperly captioned his complaint as an action for "abuse of process." We will not penalize appellant for using an incorrect caption since the nature of his claim is clear. Accordingly, we review the claim as one for malicious prosecution.

7. *Compare Hall v. Field Enterprises*, D.C.Mun. App., 94 A.2d 479, 481 (1953) (an action for abuse of process is appropriate where process is used to accomplish an end not intended by law or to compel a party to do that which he could not be legally compelled to do; in contrast with suit for malicious prosecution, "the action will lie even though the process has been validly issued, and regardless of whether there was probable cause for its issuance, or whether

any prior proceeding has terminated in favor of the present plaintiff").

8. Central Charge did not actually initiate a "new action" but filed a motion "to set aside the stay of execution." No stay of execution, however, was in effect at the time this motion was made. *See* note 5 *supra*. For the purpose of analysis, therefore, we view this motion as equivalent to the initiation of a second action for attachment.

9. Central Charge might argue that it prevailed in the second attachment proceeding because the docket was marked "judgment paid and satisfied." However, the judgment was satisfied with the payments, released from the Registry, which were paid prior to the second at-

*Cf. Zinn, supra,* 154 Mass. at 4, 27 N.E. at 773 ("the proceedings complained of were *ex parte,* and they were terminated by the reduction of attachment").

■ The determination of malice on the part of defendant is exclusively for the factfinder. *Viner v. Friedman,* D.C.Mun. App., 33 A.2d 631 (1943); *Banks v. Montgomery Ward & Co.,* 128 A.2d 600 (Md. 1943). The plaintiff need not prove "actual malice" [10] to satisfy this requirement. Rather, the requisite malice can be established from the existence of a willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff. *Ammerman v. Newman,* D.C.App., 384 A.2d 637 (1958); *Hugee v. Pennsylvania R. Co.,* 101 A.2d 740 (Pa. 1954). A reasonable trier of fact could find that Central Charge acted with such disregard by causing a second writ of attachment to issue without first checking the Court Registry, which it knew might be holding the money it sought.

■ The facts before us are sufficient to support a finding that Central Charge lacked probable cause when it sought to attach appellant's wages when there was no debt owing. Once appellant paid $277.57 into the Court Registry, the June 22, 1978 motion to vacate appellee's initial judgment became unconditional. No valid judgment existed to form the basis of a post-judgment attachment action. *Compare* D.C. Code 1973, § 16–543 ("attachment may be issued at any time *during the life of a judgment"* without issuing or reviving previous judgment) (emphasis added).

■ Finally, in order to prevail in an action for malicious prosecution there must be an arrest of the person or seizure of the property of plaintiff, or other special damages. *Ammerman v. Newman, supra; Nolan v. Allstate Home Equipment,* D.C.Mun. App., 149 A.2d 426, 429 (1959). Here, the garnishing of appellant's wages when the judgment had been satisfied and that fact easily verified, is sufficient to satisfy this

requirement. We find that a reasonable person could conclude that appellant has established the elements comprising a cause of action for malicious prosecution. Therefore, we hold that appellant's claim should have been viewed as a suit for malicious prosecution. The directed verdict was erroneously granted.

Accordingly, the judgment of the Superior Court is reversed and the case remanded for further proceedings.

*Reversed and remanded.*

___

tachment. The court should have indicated that the judgment was vacated pursuant to the court order of July 27, 1978.

10. Actual malice is dependent upon the existence of an evil, wrongful, or improper motive.