James A. LILES, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 85–2919.

United States District Court, District of Columbia.

June 30, 1986.

Joseph H. Koonz, Jr., Carolyn McKenney, Roger C. Johnson, Mark J. Brice, Koonz, McKenney & Johnson, Washington, D.C., for plaintiff.

Michael Martinez, Asst. U.S. Atty., Linda Ruiz, Business & Administrative Law Div., Dept. of Health and Human Services, Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge:

This matter is before the Court on defendants' motion to dismiss or for summary judgment ("Defendants' Motion to Dismiss"), plaintiff's opposition thereto, defendants' reply brief, and the entire record herein. For the reasons given below, the Court grants defendants' motion to dismiss.

### I. *Background*

Plaintiff Liles was employed as a Smithsonian Institution security guard from August 1976 to September 1977 and again from July 1979 to September 1982. At approximately 2:35 p.m., on August 3, 1982, Mrs. Mary Vorhies complained to Capt. James W. Greer that her 10–year–old sister, Dawn Herrington, had been sexually molested by a security guard during her visit to the National Museum of American Art ("NMAA"). Defendants' Motion to Dismiss, Exhibit 1 ("Exhibit 1") at 1. The child explained,

> that while she was touring the building alone she had been approached by a Guard on the second floor of NMAA, on the northeast side of the museum, who questioned her if she was alone, or with some relatives visiting the museum. She replied she was by herself. While looking thru Gallery 2–K on the second floor, northeast side of NMAA, the Guard asked Miss Herrington if she would like to see the inside of a locked room in the Gallery, at which time the Guard opened the wire closet door.

> Miss Herrington stated she only looked into the room from the doorway, and observed a liquor bottle and a can of Pepsi Cola sitting on a table, but did not enter into the room.

> At this point Miss Herrington stated the Guard felt parts of her body with his hands. When this occurred she stated that she backed away and left the area, came to the first floor and called her sister, Mrs. Mary Vochies [sic].

*Id.* at 1–2.

Capt. Greer contacted other security and investigative personnel in the Smithsonian after receiving the complaint. An investigation was initiated which confirmed Ms. Herrington's description of the inside of the locked closet. The investigation also determined that plaintiff was one of two officers on duty in Gallery 2–K of the museum at the time of the incident. Assignment records indicated that officers Walter Shepherd and plaintiff were assigned to that particular room. However, the victim stated that Officer Shepherd was "not the person but that she had seen Shepherd talking to her molester." Defendants' Motion to Dismiss, Exhibit 3 ("Exhibit 3") at 1.

A line-up was then arranged with three black officers including plaintiff. Ms. Herrington positively identified plaintiff as her molester. She had described her molester as "a black man wearing a uniform" who "wor[e] sunglasses, was of medium height and build and had a moustache." Exhibit 3 at 1. At that point, the Metropolitan Police

Department was summoned and they arrested plaintiff. Plaintiff was charged with committing a felony, "Indecent acts with children," in violation of section 3501(a) of Title 22, D.C. Code.[1] The Smithsonian placed him on administrative leave pending further investigation and a judicial determination.

A preliminary hearing was held before Superior Court Judge Carlisle Pratt on August 17, 1982. Subsequently, plaintiff was indicted by a grand jury on November 3, 1982, and charged with a violation of section 3501(a). Following a trial in April 1984, plaintiff was acquitted on April 12, 1984.

Shortly after being placed on administrative leave, the Smithsonian proposed that plaintiff be suspended and removed from his position in the federal service. The proposal explained to plaintiff that

[a]s a Museum Protection Officer, one of [his] responsibilities [was] to enforce law and order and to convey an image of trust and safety. Actions such as [the described molestation incident] betray[ed] this image and [could not] be tolerated. In addition [his] actions [were] prejudicial to the image and reputation of the Smithsonian and the U.S. Government.

Defendants' Motion to Dismiss, Exhibit 8 ("Exhibit 8") at 1. The Smithsonian notified plaintiff of the proposed suspension and removal and offered him a chance to comment. He never replied.

Plaintiff was removed effective September 13, 1982. The letter of removal notified him that he had 20 days to appeal to the Merit Systems Protection Board ("MSPB"). Defendants' Motion to Dismiss, Exhibit 9 ("Exhibit 9") at 1. Plaintiff never appealed his suspension or removal to the MSPB.

Subsequently, plaintiff filed an administrative claim under the Federal Tort Claims Act ("FTCA") with the Smithsonian on October 26, 1984. Defendants' Motion to Dismiss, Exhibit 10 ("Exhibit 10"). The claim sought $500,000 for false arrest and malicious prosecution. He alleged violation of both common law and constitutional rights. Exhibit 10. The claim stated that "[t]his arrest and prosecution were legally and proximately related to the claimant's prior legal and justified complaints against the Smithsonian Institution while employed there." *Id.*

The Smithsonian denied plaintiff's claim on two grounds. First, the Smithsonian stated that plaintiff "was briefly detained by Smithsonian personnel on August 3, 1982, only after a reasonable basis for suspecting him of committing a criminal offense had been established." Defendants' Motion to Dismiss, Exhibit 11. Moreover, plaintiff was arrested by Metropolitan Police Department officers and prosecuted by the U.S. Attorney for the District of Columbia. The Smithsonian took the position that since neither of these persons was an agent of the Smithsonian Institution there was no evidence of negligence on the part of the Smithsonian. *Id.* Second, the Smithsonian asserted that "any acts allegedly taken by Smithsonian personnel occurred more than two years prior to the filing of this claim," *id.,* and plaintiff's administrative claim failed to meet the statute of limitations provided by the FTCA.

Plaintiff filed no other administrative claim regarding this action or the events that occurred relative to this action. He filed the instant action on September 13, 1985. Plaintiff named the United States of America/Smithsonian Institution and Howard Toy, Director of Personnel at the Smithsonian, as defendants.

---

**1.** Section 22–3501(b) provides:

(b) Any such person who shall, in the District of Columbia, take any such child or shall entice, allure, or persuade any such child, to any place whatever for the purpose either of taking any such immoral, improper, or indecent liberties with such child, with said intent or of committing any such lewd, or lascivious act upon or with the body, or any part or member thereof, of such child with said intent, shall be imprisoned in the penitentiary not more than 5 years.

D.C. Code Ann. § 22–3501(b) (1981).

Defendants have now moved for dismissal of this action or alternatively, for summary judgment. They contend (1) that this Court lacks jurisdiction over the complaint since plaintiff did not timely file an administrative claim and thus failed to exhaust his administrative remedies; (2) that even if the Court had jurisdiction over the tort claims, the first three counts of this action should be dismissed since there was probable cause for the arrest and subsequent imprisonment and prosecution of the plaintiff; (3) that plaintiff's constitutional claims are barred by the Supreme Court's holding in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); (4) that plaintiff has failed to state a valid claim for any constitutional tort; and (5) that defendant Toy is entitled to either absolute or qualified immunity from plaintiff's claims. Because the Court finds that it does not have jurisdiction over this matter for the reasons given below, it will restrict its discussion to the jurisdictional questions.

## II. *Discussion*

### A. *Federal Tort Claims Act Claims*

It is well settled law that the United States may not be sued without its consent. This consent must take the form of an express waiver of sovereign immunity. *Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 388 (D.C.Cir.1983); 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3654, at 186 (1985). The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, is a limited waiver of the government's sovereign immunity. In general, the FTCA "waives immunity, allowing the government to be liable in tort for negligent or wrongful acts committed by a government employee acting within the scope of his employment when a private person would be liable for those acts under applicable law." *Jayvee Brand, Inc. v. United States*, 721 F.2d at 388. However, "the terms of [the government's] consent as specified by Congress define the court's jurisdiction to entertain a suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100

S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

Section 2401(b) contains the statute of limitation for the FTCA. This section provides that,

> [a] tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

A claimant must meet two jurisdictional hurdles under this section. *Schuler v. United States*, 628 F.2d 199, 201–02 (D.C. Cir.1980) (en banc) (per curiam); *Dyniewicz v. United States*, 742 F.2d 484, 485 (9th Cir.1984); *Willis v. United States*, 719 F.2d 608, 610–13 (2d Cir.1983). "A claim must be filed with the agency within two years of the claim's accrual, *and* the claimant must file suit within six months of administrative denial of the claim. If either requirement is not met, suit will be time barred." *Dyniewicz v. United States*, 742 F.2d at 485 (emphasis added).

Defendants contend that the Court lacks jurisdiction over plaintiff's claim of false arrest, false imprisonment, and malicious prosecution. The basis of this contention is that plaintiff's administrative claim was filed more than two years after the respective claims accrued and is thus time-barred under section 2401(b). Plaintiff disagrees and argues instead that "strict and literal compliance with the specific dictates of the Act's administrative claim procedure may be excused under certain circumstances." Plaintiff's Opposition at 3. The Court disagrees with plaintiff's position.

The statute of limitations under section 2401(b) is jurisdictional in nature and is not subject to equitable considerations such as waiver and estoppel. *Hohri v. United States*, 782 F.2d 227, 245 (D.C.Cir.1986).

See also, Fol v. United States, 548 F.Supp. 1257, 1258 (S.D.N.Y.1982); Stewart v. United States, 503 F.Supp. 59, 63 (N.D.Ill. 1980), aff'd, 655 F.2d 741 (7th Cir.1981); Martin v. United States, 436 F.Supp. 535, 538 (S.D.Cal.1977). ("The timely filing of an administrative claim has long been recognized to be a jurisdictional prerequisite to suit under the Federal Tort Claims Act."). Failure to comply with the requirements of section 2401(b) bars the action. 28 U.S.C. § 2401(b); Leonhard v. United States, 633 F.2d 599, 624 (2d Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); Fol v. United States, 548 F.Supp. at 1258.

■ The facts in this matter demonstrate clearly that plaintiff's claims of false arrest and false imprisonment are time barred under section 2401(b). Plaintiff was arrested by the Metropolitan Police officers on August 3, 1982; therefore, his claims for false arrest and false imprisonment accrued on this date. Plaintiff filed his administrative claim with the Smithsonian on October 26, 1984, exactly 2 years and 84 days after the accrual of his claim. The Court, therefore, finds that plaintiff filed his administrative claim more than two years after his claims for false arrest and false imprisonment accrued. The Court notes with interest that the Smithsonian denied plaintiff's claim on the very same basis. Exhibit 11. Accordingly, the Court grants defendants' motion to dismiss as to plaintiff's claims of false arrest and false imprisonment.

Plaintiff's claim of malicious prosecution, however, requires a different conclusion. The tort of "[m]alicious prosecution requires: 1) the initiation or procurement of criminal proceedings; 2) without probable cause; 3) primarily for a purpose other than bringing an offender to justice; and 4) termination of the proceedings in favor of the accused." Davis v. Giles, 769 F.2d 813, 814–15 (D.C.Cir.1985) (citing Restatement (Second) of Torts § 653 (1977)). The stat-

ute of limitations on a malicious prosecution action runs from the date on which the prior, allegedly malicious, suit was terminated in favor of the defendant, not from the date on which the allegedly malicious suit was commenced. Shulman v. Miskell, 626 F.2d 173, 175 (D.C.Cir.1980).

■ Plaintiff was acquitted of the criminal charges against him on April 12, 1984. He filed his administrative claim with the Smithsonian Institution on October 26, 1984. It is apparent to the Court that plaintiff's claim of malicious prosecution meets both jurisdictional barriers contained in section 2401(b). The administrative claim was filed well within the statutory two-year period after plaintiff's claim arose and this civil action was filed within six months after the Smithsonian denied his claim. Accordingly, the Court finds that plaintiff's claim of malicious prosecution was filed timely.

The Court's inquiry, however, does not end there. The Court must still consider plaintiff's claim of malicious prosecution. Plaintiff alleges that defendants instituted the above-described criminal proceedings against him without probable cause. Defendants dispute that allegation and assert that a showing of good faith or probable cause will defeat the plaintiff's claim of malicious prosecution. A review of the relevant case law supports the view of defendants.

In a claim for malicious prosecution, "want of probable cause is the very gist of the action, and must be pleaded and proved if the plaintiff is to prevail...." 52 Am. Jur.2d Malicious Prosecution § 50, at 216 (1970). Under District of Columbia law,[2] probable cause is "such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." Ammerman v. Newman, 384 A.2d 637, 639–40 (D.C.App. 1978), cited in Davis v. Giles, 769 F.2d at 815. The existence of probable cause de-

---

**2.** Since the alleged tort occurred in the District of Columbia, the Court must apply District of Columbia law. Erie R.R. v. Tompkins, 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160 (3d Cir.1976).

pends on the honest belief of the person instituting the proceeding. *Ammerman*, 384 A.2d at 640.

 It appears to the Court that probable cause existed at the time criminal proceedings were instituted against the plaintiff. In general, "where the facts are disputed, the question of whether probable cause existed is one for the jury." *Davis v. Giles*, 769 F.2d at 815. However, "an indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause...." *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 865 n. 19, 43 L.Ed.2d 54 (1974), *cited in United States v. Contreras*, 776 F.2d 51, 53–54 (2d Cir. 1985). "An indictment is sufficient to try a defendant on the counts charged therein, and satisfies the requirements of the fifth amendment," and "it cannot even be challenged on the ground that it is based on inadequate or incompetent evidence." *United States v. Contreras*, 776 F.2d at 54 (citing *Lawn v. United States*, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958) and *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956)). Nothing more need be said. A jury of plaintiff's peers determined that probable cause existed and subsequently, an indictment was entered against him. A federal court cannot now second-guess that determination. Accordingly, the Court grants defendants' motion to dismiss as to plaintiff's claim of malicious prosecution.

### B. *Constitutional Claims*

Finally, defendants contend that the Court should dismiss plaintiff's claims of deprivation of his fifth amendment property and liberty rights without due process of law. They assert that "plaintiff was properly removed from his job at the Smithsonian pursuant to the Civil Service Reform Act, 5 U.S.C. §§ 7501–7701." Defendants' Motion to Dismiss at 8. Defendants point to the fact that plaintiff had adequate notice of the available appeal process before the Merit Systems Protection Board ("MSPB") and his failure to appeal his

removal to that body. *Id.* Moreover, defendants argue that "the availability of the MSPB appeal mechanism totally forecloses any constitutional claims given the Supreme Court's holding in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

Plaintiff disagrees and argues that "the extent to which *Bush* preempts [a] plaintiff's constitutional claims ... depends on the meaningfulness of the administrative remedies and the opportunity for judicial review under the procedures established under the Civil Service Reform Act...." Plaintiff's Opposition at 11 (quoting *Pope v. Bond*, 613 F.Supp. 708, 714 (D.D.C. 1985)). He contends that the administrative remedy available to plaintiff in this case was neither meaningful nor constitutionally adequate. This is so, argues plaintiff, because he "was faced with the wholly untenable Hobson's choice of either proceeding with the available civil service procedures at the risk of prejudicing his defense in his forthcoming trial, or foregoing the civil service remedies in order to preserve the sanctity of his criminal defense." Plaintiff's Opposition at 12–13. He believes that his decision to choose the latter route "should in no way preclude him from seeking relief from the wrongs visited upon him by defendant [sic]." *Id.* at 13. The Court must disagree again with the plaintiff.

The Civil Service Reform Act of 1978 ("CSRA" or "the Act"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C. (1982)), provides formal proceedings before a government agency for personnel actions such as removal, *see* 5 U.S.C. § 7512(1), which rise to the level of "adverse actions." The proceedings include a direct appeal to the Merit Systems Protection Board, *see* 5 U.S.C. § 7513(d), and judicial review of that decision in the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1). "[F]or major personnel actions specified in the statute ('adverse actions'), direct judicial review [is provided under the statutory scheme] after *extensive prior administra-*

*tive proceedings. Carducci v. Regan,* 714 F.2d 171, 175 (D.C.Cir.1983) (emphasis added).

In *Bush v. Lucas,* the case relied upon by both sides, the petitioner there also alleged a constitutional violation by a government official. The Supreme Court held that where a government employee's claims arise out of an employment relationship that is governed by the CSRA's comprehensive procedural and substantive provisions giving meaningful remedies against the United States, it would be inappropriate for it to supplement that regulatory scheme with a new nonstatutory damages remedy. These very same procedures were available to the plaintiff at the time of his removal but it appears to the Court that plaintiff failed to avail himself of them prior to filing this present claim and thus failed to exhaust his administrative remedies.

In general, failure to exhaust administrative remedies permits a court to dismiss the action because it is untimely and no subject matter jurisdiction exists. *See* 5 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1350, at 169 (Supp.1985) and the cases cited therein. This is especially true where Congress has designed an extensive administrative procedure to protect the interests of government employees in personnel matters. The fact that plaintiff "has alleged constitutional deprivations does not change the analysis, for so long as effective remediation conceivably could have been achieved through the administrative process, exhaustion was prerequisite." *Daly v. Costle,* 661 F.2d 959, 963 (D.C.Cir. 1981) (footnote omitted). *See also Wallace v. Lynn,* 507 F.2d 1186, 1190–91 n. 37 (D.C. Cir.1974), and *Freeman v. Schultz,* 468 F.2d 120, 122 (D.C.Cir.1972).

Section 7513(d) of the Act provides that "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title." 5 U.S.C. § 7513(d). The Smithsonian notified plaintiff of this right to appeal in a letter of removal dated August 27, 1982. Exhibit 9.

The museum even included a copy of MSPB appeals regulations and explained the procedure for filing an appeal. Plaintiff nonetheless failed to file an appeal and waited over one year after receipt of the letter of removal before even filing his administrative claim with the Smithsonian.

Plaintiff had ample opportunity to appeal the decision of the Smithsonian but failed to do so. He cannot now come into Court to challenge that personnel decision without first having given the statutorily designated body, the MSPB, a chance to review the defendants' action. The Court also observes at this juncture that even if plaintiff had exhausted his administrative remedies, the Court of Appeals for the Federal Circuit, and not the federal district court, is the proper forum for review of a final order of the Merit Systems Protection Board pursuant to the Federal Courts Improvement Act, 5 U.S.C. § 7703(b)(1) (1982). *See also Gray v. Office of Personnel Management,* 771 F.2d 1504, 1508 n. 4 (D.C.Cir.1985). Accordingly, the Court finds that it does not have subject matter jurisdiction over plaintiff's constitutional claims and grants defendants' motion to dismiss as to those claims.

For the reasons given above, the Court grants defendants' motion to dismiss as to all alleged claims on the basis of lack of subject matter jurisdiction.