**Patricia Ann MILONE, Appellee,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

No. 95–7208.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1996.

Decided Aug. 13, 1996.

Jeanette J. Clark, argued the cause for appellant, with whom Robert L. Polk and Robert J. Kniaz, Washington, DC, were on the briefs.

Jonathan E. Halperin, Washington, DC, argued the cause and filed the brief for appellee.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Defendant Washington Metropolitan Area Transit Authority ("WMATA") appeals from a judgment in favor of a passenger claiming damages for an injury received when she was assaulted by another passenger on a WMATA-operated bus. Appellant contends that the district court erred in denying its motion for judgment as a matter of law. Because we find insufficient evidence to support the jury's verdict in favor of the plaintiff, we agree with the allegation of error and reverse.

## Background

In 1993, Patricia Milone filed this suit against WMATA for negligence. She alleged that the injuries she received from an assault occurring when she was a passenger on a WMATA bus resulted from the bus driver's failure to maintain order on the bus.

At trial, Milone testified that she had taken the same bus route (Route 60) to and from work each day for approximately 16 years. On the day of the accident, Milone sat in the first row of seats facing forward, approximately five feet from the driver. Shortly after taking her seat, Milone heard a loud noise coming from the rear of the bus. She testified that this noise was louder than anything she had ever heard while riding a metro bus.

As the bus approached an intersection, Milone heard the crowd of people in the rear of the bus yelling "whitehead" loudly and repeatedly. Shortly thereafter, Milone felt something strike her shoulder, making a popping noise. Because she did not want to appear conspicuous, she did not turn around or inform the bus driver of this incident. She testified, however, that she believed that there was no way that the bus driver could not have heard or been aware of the disturbance.

While the bus was stopped at the Federal Center Southwest bus stop, Milone testified that a tall white woman ran towards the bus carrying a bus transfer. The people at the rear of the bus yelled, "Hey, whitey, whitey wants to get on the bus, you gotta let whitey get on the bus."

When the bus approached Fourth and I Streets, S.W., members of the group in the rear of the bus yelled "ding, ding, ding, next stop." As two members of the group disembarked at the Wesley and I Street stop, Milone was punched twice in the back of the head. The assailants immediately left the bus and fled. Milone remained on the bus, exiting at her usual stop. Milone testified that she did not speak to the bus driver at any time during the trip.

Later that evening, Milone was treated at George Washington University Hospital for head injuries. Several days later, Milone was examined by a neurologist who diagnosed Milone as suffering from a concussion. As a result of the assault, Milone also experienced a recurrence of neck pain due to a previous neck injury. In addition to having a WMATA supervisor testify, WMATA introduced evidence of the department's prescribed use of bus security devices. After a four-day trial, the jury returned a verdict in favor of plaintiff, awarding her $7,000. WMATA filed a motion for a judgment as a

matter of law. The district court denied this motion, *see Milone v. WMATA*, No. 93–1227, Memorandum Order (D.D.C. July 27, 1995), and appellant appealed.

## Analysis

Judgment as a matter of law is proper "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on an issue." FED.R.CIV.P. 50(a)(1). Stated conversely, the jury's verdict must stand " 'unless the evidence, together with all inferences that can be reasonably drawn therefrom is so one-sided [in favor of the moving party] that reasonable men could not disagree on the verdict.' " *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983) (quoting *Murphy v. United States*, 653 F.2d 637, 640 (D.C.Cir.1981)).

It is not enough to sustain a verdict against the bus company that plaintiff's evidence establishes an assault and injuries occurring while a passenger on the bus. Under District of Columbia law, it has been said that "[a] common carrier is required to protect its passengers against assault or interference with the peaceful completion of their journey." *Matthews v. Southern Ry. Sys.*, 157 F.2d 609, 610–11 (D.C.Cir.1946). This does not mean that the carrier is an insurer against assaults. *D.C. Transit Sys., Inc. v. Carney*, 254 A.2d 402, 403 (D.C.1969). "[W]hen the intervening act involves criminal rather than negligent conduct by a third party, ... the carrier undeniably has a duty to protect its passengers from *foreseeable* harm arising from criminal conduct of others." *WMATA v. O'Neill*, 633 A.2d 834, 840 (D.C.1993) (emphasis added). This is not a statement of a special degree of care, but rather a particularized application of the tort duty of exercising reasonable care toward the rights of others, in this case others in a special relationship with the allegedly negligent party. *See D.C. Transit Sys., Inc.*, 254 A.2d at 403. The evidence in this case will not support a finding of breach of that duty.

Milone contends that WMATA's own rules and evidence of the unknown driver's breach of those rules makes out a case of negligence. However, the record does not support this contention. She specifically relies on two sections of the Department of Bus Service Employees Handbook: Section 13.3 regarding the use of a silent alarm and section 13.4 regarding the use of flashing alarm lights. Section 13.3 provides that every bus is "equipped with a silent alarm to enable operators to request emergency assistance." According to section 13.3, the driver must request assistance if "any one of the following situations involving either the operator or passengers [is present]: (a) assault, (b) threat of bodily harm, (c) robbery, (d) acute illness or serious injury." Section 13.4 of the Handbook provides that every bus is equipped with flashing alarm lights, which allow drivers to visually signal police officers that the driver needs assistance. The rule requires drivers to use these lights only "to alert the police or the public who are nearby that the operator needs immediate assistance."

The evidence does not disclose that any of the factors listed in section 13.3 were present on the bus, and the situation certainly was not one which could be said to require "immediate assistance." As former bus operator Scott testified, loudness on a bus is a common everyday occurrence and not one for which he would call central control. Additionally, in 1990 a memorandum was sent to all bus operators regarding excessive use of the silent alarms. This memorandum reminded operators that it was important that they "only use the silent alarm whenever there is a REAL emergency." It defined emergency as "any one of the following situations involving either the operator or the passengers: 1. assault; 2. threat of bodily harm; 3. robbery; 4. acute illness/injury." Appellee failed to introduce any evidence at trial to discredit this memorandum's implication that there was a serious problem in overuse of the alarm.

Nor was there evidence from which a reasonable jury could infer a need for activating the alarm independent of the policy. Although Milone testified that the noise she heard on the bus the day of the assault was the loudest she had ever heard while riding a

metro bus, she failed to compare this level of the noise to anything else. As a result, the jury was allowed to speculate not only about the volume and loudness of the noise, but also about whether the atmosphere was such that a bus operator should have foreseen harm could come to a passenger.

Sufficiency of the evidence to support a claim for relief may not be established by jury speculation. *See, e.g., Kasmer v. Sternal,* 165 F.2d 624, 626 (D.C.Cir.1948) (holding that a jury may not speculate to an element of a negligence action when there is "not a jot or tittle of evidence" as to that element). In the end, then, Milone may not rely on the Company's handbooks and rules. She must prove independently the foreseeability of the risk against which she alleges WMATA's employee failed to protect her. This she has not done. Although she relies on *O'Neill* as authority for the proposition that WMATA is liable for injuries done its passengers by assaults during transit, *O'Neill* is very plainly distinguishable.

In that case, two passengers, both visibly intoxicated when they boarded the bus, assaulted an elderly man. 633 A.2d at 835–36. Before assaulting the plaintiff, the two men had walked up and down the aisle of the bus yelling obscenities and threatening remarks, as well as making menacing faces toward some of the passengers. *Id.* The men also directly threatened to kill the plaintiff, asking him repeatedly if he wanted to die. *Id.* Additionally, several passengers, including the plaintiff, asked the driver to do something about the unruly passengers before the assault, but the driver refused. *Id.* There was sufficient evidence of foreseeability in *O'Neill* to have warranted action, the nonfeasance of which would constitute negligence. No such foreseeability existed on the evidence in the present record.

All Milone has offered is that the bus was noisy. She has shown nothing to establish that the driver should have foreseen from that noisy condition that a passenger might be assaulted and should therefore have taken action by way of silent alarm or flashing lights to intervene in the foreseeable assault. According to the evidence, (1) Milone never told the bus driver that an object struck her shoulder; (2) she did not speak to the operator at any time; (3) no one on the bus ever spoke to the operator to complain about any behavior on the bus; (4) as far as she knew, no one else was struck before she was; (5) she did not expect to be struck in the head by the two patrons as they left the bus; (6) the incident with the strike to her head happened in a matter of seconds; (7) after the passengers struck her, they immediately ran off the bus; (8) she did not ask the driver to seek medical assistance for her; and (9) at no time did the noisy passengers walk up and down the bus aisle intimidating or threatening other passengers.

Taking the evidence even in the light most favorable to the appellee, it is clear that no reasonable juror could find that the bus operator had actual or constructive notice that Milone or any other passenger was in danger of assault or that there was a dangerous atmosphere on the bus that created a duty on the part of the operator to seek assistance or take other action.

### Conclusion

Because the evidence is insufficient to support a verdict that WMATA breached any duty to the plaintiff appellee, we reverse the judgment in her favor.